## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| **CELIA GIBOYEAUX,** )<br> )<br>  **Plaintiff,** )<br> )<br>  v. )<br> )<br> **COMMISSIONER OF SOCIAL** )<br> **SECURITY**, *sued as Andrew Saul,* )<br> *Commissioner of Social Security,*[1] )<br> )<br>  **Defendant.** ) | **CAUSE NO. 2:19-cv-00076-JVB-SLC** |

### REPORT AND RECOMMENDATION

Plaintiff Celia Giboyeaux appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on June 13, 2019, by District Judge Joseph S. Van Bokkelen pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), Northern District of Indiana Local Rule 72-1, and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 14).

Having reviewed the record, the undersigned Magistrate Judge finds that the second of Giboyeaux's two arguments has merit, warranting a remand of this case. Accordingly, I RECOMMEND that the Commissioner's decision be REVERSED, and the case be REMANDED to the Commissioner for further proceedings. This Report and Recommendation is based on the following facts and principles of law.

---

[1] Andrew Saul is now the Commissioner of Social Security, *see, e.g., Saunders v. Saul*, 777 F. App'x 821 (7th Cir. 2019); *Michael T. v. Saul*, No. 19 CV 1519, 2019 WL 3302215, at *1 n.2 (N.D. Ill. July 23, 2019), and thus, he is automatically substituted for Nancy Berryhill in this case, *see* Fed. R. Civ. P. 25(d).

## I.  FACTUAL AND PROCEDURAL HISTORY

Giboyeaux applied for DIB and SSI in October 2015, alleging disability as of February 1, 2009, which she later amended to September 26, 2015.  (ECF 11 Administrative Record ("AR") 15, 42).  Giboyeaux was last insured for DIB on December 31, 2015.  (AR 15, 181).  Thus, for purposes of her DIB claim, she must establish that she was disabled as of that date.  *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she was disabled as of her date last insured in order to recover DIB).

Giboyeaux's application was denied on initial consideration and on reconsideration.  (AR 221, 234).  A hearing was held on April 25, 2018, before administrative law judge ("ALJ") Trina Moore, at which Giboyeaux, who was represented by counsel, and a vocational expert testified.  (AR 31-73).  On August 24, 2018, the ALJ rendered an unfavorable decision to Giboyeaux, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments.  (AR 15-25).  The Appeals Council denied Giboyeaux's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

Giboyeaux filed a complaint with this Court on February 25, 2019, seeking relief from the Commissioner's final decision.  (ECF 1).  In this appeal, Giboyeaux argues that:  (1) the ALJ's evaluation of Giboyeaux's symptom testimony was legally insufficient; and (2) the residual functional capacity ("RFC") is not supported by substantial evidence.  (ECF 17 at 8-18).

At the time of the ALJ's decision, Giboyeaux was thirty-four years old (AR 25, 322), had obtained her General Educational Development (GED) certificate (AR 42, 367), and had past work experience as a cashier and laborer (AR 357).  In her disability application, Giboyeaux

2

alleged disability due to anxiety, depression, ovarian cysts, fibroid tumors, chronic hives, bulging discs, knee pain, and acid reflux. (AR 366).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

3

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) . . . whether she can perform her past relevant work; and (5) whether the claimant is incapable of performing any work in the national economy."[2]  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520, 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*  The

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. §§ 404.1520(e), 416.920(e).

4

burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

On August 24, 2018, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 15-25). At step one of the five-step analysis, the ALJ found that Giboyeaux had not engaged in substantial gainful activity since September 26, 2015, her amended alleged onset date. (AR 17). At step two, the ALJ found that Giboyeaux had the following severe impairments: anxiety, depression, inflammatory polyarthropathy, arthralgia, chronic hives/chronic idiopathic urticaria, asthma, and cervical radiculopathy. (AR 17). At step three, the ALJ concluded that Giboyeaux did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 18).

Before proceeding to step four, the ALJ determined that Giboyeaux's symptom testimony was "not entirely consistent," as well as "inconsistent," with the medical evidence and other evidence of record. (AR 21). The ALJ then assigned her the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes or scaffolds; never operate foot controls bilaterally; engage in work only on even terrain; avoid all exposure to extreme heat, cold and pulmonary irritants such as fumes, odors, dusts, gases and area of poor ventilation; occasional exposure to workplace hazards such as unprotected heights and moving machinery; limited to simple, routine tasks on a continuous basis; unable to perform work that requires directing others, abstract thought or planning; limited to simple work related decision and routine workplace changes; no assembly line pace work but with end of the day quotas with no tandem tasks or teamwork where one production step is dependent upon a prior step; limited to work that requires only superficial and no direct contact with the public and only occasional contact with co-workers and supervisors in a setting with minimal interaction on detailed matters.

(AR 20). At step four, the ALJ found that Giboyeaux was unable to perform any of her past

5

relevant work. (AR 24). At step five, the ALJ found that Giboyeaux could perform a significant number of other jobs in the economy, including electronics worker, plastic hospital products assembler, and document preparer. (AR 25, 67). Accordingly, Giboyeaux's applications for DIB and SSI were denied. (AR 25).

### C. Giboyeaux's Symptom Testimony

Giboyeaux first challenges the ALJ's consideration of her symptom testimony, alleging that the ALJ: (1) applied an improper legal standard by incorporating boilerplate language, and (2) failed to minimally articulate her reasoning for finding that Giboyeaux's testimony was not fully credible. (ECF 17 at 8-11). For the following reasons, the ALJ's consideration of Giboyeaux's symptom testimony should not be disturbed.

"In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (stating that with respect to an adverse credibility

determination, it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'" (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

Giboyeaux first argues that a remand is warranted for reconsideration of her symptom testimony because the ALJ applied an improper legal standard when concluding that such testimony was "not entirely consistent" with the medical evidence and other evidence of record. (AR 21). Specifically, when assessing Giboyeaux's symptom testimony, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the evidence of record.

(AR 21).

Giboyeaux contends that the ALJ's use of the phrase "not entirely consistent" indicates that the ALJ credited statements only if they were "entirely consistent" with the rest of the evidence of record, which is a more stringent legal standard akin to a clear and convincing or beyond a reasonable doubt standard, than the preponderance of the evidence standard that should have been applied.[3] (ECF 17 at 8). Giboyeaux cites several recent cases from the Northern

---

[3] "Preponderance of the evidence means such relevant evidence that as a whole shows that the existence of the fact to be proven is more likely than not." 20 C.F.R. §§ 404.901, 416.1401.

7

District of Illinois, and a few from this Court as well, in support of her argument. (*See* ECF 17 at 8-9 (citations omitted)). For example, in *Minger v. Berryhill*, the judge rejected the ALJ's use of boilerplate language akin to that employed by the ALJ in this case, stating:

> It is . . . yet another example of the continuous, confusing and meaningless boilerplate that is all too common in these decisions and that stubbornly persists in spite of the efforts of the Court of Appeals.
>
> Sadly, this current example doesn't even match what the Commissioner's own regulations say the standard for evaluating allegations about symptoms is: that the ALJ must determine whether those allegations 'can reasonably be accepted as consistent with the objective medical evidence and other evidence.' That . . . is clearly a different, and a not as rigorous, a standard than the ALJ[] demanded in this case, namely that allegations be 'entirely consistent' with the medical and other evidence. If ALJs really want boilerplate paragraphs in their opinions so badly, why not simply echo the regulatory language?

307 F. Supp. 3d 865, 871 (N.D. Ill. 2018) (internal citations omitted); *see also John P. v. Saul*, No. 2:19cv0004, 2019 WL 4072118, at *11 (N.D. Ind. Aug. 28, 2019); *Justin H. v. Berryhill*, No. 2:18cv383, 2019 WL 2417423, at *12-13 (N.D. Ind. June 7, 2019); *Murphy v. Berryhill*, No. 1:18cv118, 2019 WL 1123511, at *15 (N.D. Ind. Mar. 11, 2019); *Farley v. Berryhill*, 314 F. Supp. 3d 941, 946 (N.D. Ill. 2018).

However, as the Commissioner points out, other judges in this district have concluded that inclusion of the "not entirely consistent" boilerplate language does not, by itself, serve as a basis for remand. (ECF 18 at 7).

> While the ALJ's boilerplate language does not match the statutory standard, an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. Moreover, under SSR 16-3p . . . , the ALJ must "evaluate whether the statements are consistent with the objective medical evidence and the other evidence." Therefore, the use of the language "not entirely consistent" is not, by itself, a basis for remand.

*Blackwell v. Berryhill*, No. 2:17-cv-00460-JVB-APR, 2019 WL 1397476, at *5 (N.D. Ind. Mar.

8

27, 2019) (citations omitted); *see also Joyce W. v. Berryhill*, No. 2:18-cv-104-JVB-JEM, 2019 WL 2353500, at *5 (N.D. Ind. June 3, 2019); *Torres v. Berryhill*, No. 2:17-cv-393, 2019 WL 2265367, at *6 (N.D. Ind. May 28, 2019).

Here, the ALJ did not rely solely on the boilerplate language in discounting Giboyeaux's symptom testimony. Rather, as discussed *infra*, the ALJ summarized the medical evidence, noting where the objective medical evidence did not support Giboyeaux's allegations of disabling limitations. (*See* AR 20-24). Furthermore, in the sentence following the ALJ's use of "not entirely consistent" phrase, the ALJ more definitively stated that Giboyeaux's symptom testimony was "inconsistent with the evidence of record." (AR 21). And earlier in her decision, the ALJ recited the proper standard, stating: "In making [the RFC] finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (AR 20). Considering this context, the undersigned magistrate judge agrees with those judges who have concluded that an ALJ's incorporation of the boilerplate language, while ill advised, does not in and of itself serve as a basis for a remand of this case. *See Lafayette v. Berryhill*, 743 F. App'x 697, 699 (7th Cir. 2018) ("[T]he [boilerplate] formulation does not require a remand if the ALJ identified legitimate reasons for discrediting the claimant's testimony." (citation omitted)).

Giboyeaux also argues that after reciting the boilerplate language, the ALJ provided a summary of Giboyeaux's testimony and the medical evidence, but "none of that summary included any reasoning for the ALJ discounting [her] statements." (ECF 17 at 8 (citing AR 20-23)). Giboyeaux contends, therefore, that the ALJ erred by failing to provide specific reasons for the weight afforded to her symptom testimony. (*Id.*). Indeed, an ALJ must support her

9

credibility determination with "specific reasons supported by the record." *Richards v. Berryhill*, 743 F. App'x 26, 29 (7th Cir. 2018) (citation omitted). If an ALJ's judgment of a claimant's credibility "was tied to evidence in the record and was not patently wrong, we may not disturb it." *Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019) (citation omitted). Consequently, "an ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (alteration in original) (citation and internal quotation marks omitted).

Here, the ALJ adequately supported and articulated her consideration of Giboyeaux's symptom testimony. The ALJ first contrasted Giboyeaux's testimony of debilitating limitations with her daily activities. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (stating that an ALJ will consider a claimant's daily activities when evaluating her symptom testimony); *see also Smith v. Apfel*, 231 F.3d 433, 440 (7th Cir. 2000) (finding that the claimant's pain complaints were "inconsistent with his minimal, non-prescription treatment (6 non-aspirin a day), his ability to perform daily activities without much difficulty, and his appearance and demeanor at the hearing"). The ALJ noted that Giboyeaux's Adult Function Report indicates that she receives help from her family with some household chores, but that she gets her children ready for school in the morning, attends school functions and conferences, attends her children's activities, and drives a car three to four days a week. (AR 20-21 (citing AR 394-401); *see also* AR 48-50). The ALJ also considered that in contrast to Giboyeaux's testimony of disabling limitations, she told Dr. Julian Ungar-Sargon in early 2018 that her pain symptoms were alleviated by her medications and had "[l]ittle or no effect on her activities of daily living." (AR 23 (citing AR 1431)); *see Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (affirming the ALJ's

10

credibility determination where the claimant's allegations conflicted with her prior statements to medical providers). Thus, one reason the ALJ did not entirely credit Giboyeaux's symptom testimony was because her daily activities, and some statements she made to her medical providers about such activities, were inconsistent with her testimony of disabling limitations.

The ALJ also observed that Giboyeaux's physical symptom testimony was not well supported by the objective medical evidence. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (instructing an ALJ to consider the objective medical evidence, or lack thereof, as a factor in assessing a claimant's symptoms). The ALJ considered, for example, that much of Giboyeaux's diagnostic testing, such as X-rays, MRIs, ultrasounds, CT scans, and EMGs, revealed just mild or normal results. (AR 18, 21-22; *see, e.g.*, AR 883-84, 886-88, 894-97, 906-10, 925, 927, 1628, 1650-53). The ALJ also considered that Giboyeaux's clinical exams often revealed normal range of motion, strength, and sensation; no pitting edema; negative straight-leg-raising tests; normal gait, squatting, tandem walk, and standing on one leg; and the ability to get on and off the examination table without difficulty. (AR 18, 22-23; *see, e.g.*, AR 848, 903-04, 915, 919-20, 962-66, 1206, 1390-92). The ALJ reviewed Dr. Ungar-Sargon's documentation of Giboyeaux's complaints of cold and purple hands and feet, but noted that "this was not a regular finding with other doctors." (AR 23). And while Giboyeaux did have some diffuse edema in her hands on occasion, she had a normal neurological exam and normal fine-finger manipulation and grip strength. (AR 22-23; *see* AR 997, 1234-36); *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other objective medical evidence in the record."); *Smith v. Apfel*, 231 F.3d 433, 439 (7th Cir. 2000) ("[A]n ALJ may consider the lack of medical evidence as probative of the claimant's credibility." (citation

11

omitted)). Thus, a second reason the ALJ discounted Giboyeaux's symptom testimony was the lack of objective medical evidence supporting the severity of her complaints.

The ALJ also considered the types of treatment that Giboyeaux had received for her conditions and the effectiveness of that treatment. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (identifying a claimant's use of medications and treatment measures as two applicable factors in assessing a claimant's subjective symptoms). For example, the ALJ considered that medications helped to reduce the severity of Giboyeaux's pain and migraine headaches; and that injections reduced, but did not eliminate, her hives. (AR 18, 21-23; *see* AR 1431, 1434, 1437). The ALJ specifically noted the record reflected that in August 2016, Giboyeaux was able to control her hives for the most part by taking a combination of antihistamines; in late 2016, her urticaria symptoms were 95% improved with Xolair; and in July 2017, her asthma was stable on Dulera. (AR 22; *see* AR 967, 997, 1015). The conservative treatment and effectiveness of Giboyeaux's medications, thus, is another reason that the ALJ discounted the severity of her symptom testimony.

Similarly, the ALJ observed that Giboyeaux's complaints of disabling mental symptoms were not substantiated by the medical evidence. (AR 23). While Giboyeaux complained of some anxiety, irritability, and fatigue to her medical providers, mental status examinations were generally within normal limits, other than revealing some anxiety. (AR 23; *see, e.g.*, AR 441-42, 445, 453, 456-57, 459-60, 467, 978, 984, 987-88, 990-91, 1025, 1035, 1041, 1050, 1079, 1168). The ALJ also considered that in January 2016, Giboyeaux told her mental health provider that she felt she needed to attend therapy "due to her Social Security claim." (AR 23 (citing AR 455)). The ALJ considered that Giboyeaux was prescribed various medications for her anxiety

12

and depression, which helped reduce, thought did not completely alleviate, her symptoms. (AR 23 (citations omitted)). The ALJ also considered evidence indicating that Giboyeaux's fatigue was likely due to depression and that she was feeling better on Vitamin D. (AR 23, 1168).

As explained earlier, at the end of the day, "an ALJ's credibility assessment will stand 'as long as [there is] some support in the record.'" *Berger*, 516 F.3d at 546 (alteration in original) (citation omitted). Here, when assessing Giboyeaux's symptom testimony, the ALJ built an adequate and logical bridge between the evidence of record and her conclusion that Giboyeaux's symptom testimony was inconsistent with such evidence, *see Ribaudo*, 458 F.3d at 584, and her conclusion is not "patently wrong," *Powers*, 207 F.3d at 435. Consequently, the ALJ's assessment of the credibility of Giboyeaux's symptom testimony, which is entitled to special deference, *Powers*, 207 F.3d at 435, should stand.

### D. The RFC

Giboyeaux also argues that the ALJ failed to adequately explain how she arrived at the assigned RFC and that the RFC is not supported by substantial evidence. This argument has more traction and necessitates a remand of the Commissioner's final decision.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such

13

> as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3). Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

"[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ "satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence"). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' [her] reasoning so as to connect the evidence to [her] conclusions." *Id.* at 657-58 (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

Here, when considering the opinion evidence, the ALJ observed that Dr. M. Brill, Dr. J.V. Corcoran, Joelle J. Larsen, Ph.D., and Donna Unversaw, Ph.D., the state agency doctors, found in July and October 2016 that all of Giboyeaux's impairments were non-severe as to her SSI claim, and that there was insufficient evidence to make a determination before her date last insured as to her DIB claim. (AR 24 (citing AR 165-203)). While Giboyeaux submitted treatment records from her treating medical providers, no provider completed a medical source opinion or assigned her specific limitations, and thus, there were no other medical opinions of

14

record addressing Giboyeaux's restrictions.  Ultimately, the ALJ assigned the state agency doctors' opinions "little weight" and instead found several of Giboyeaux's impairments to be "severe" at step two.  (AR 17, 24).  The ALJ concluded that there was "sufficient evidence" to make a determination, including Giboyeaux's complaints to her medical providers, her treatment with medications, and her "start[ing] treat[ment] for her mental impairments in October 2015 with evidence of some frustration and irritability."  (AR 24).

Giboyeaux argues that once the ALJ rejected the state agency doctors' opinions, "the ALJ was left with an evidentiary deficit" and was "required to seek evidence to fill that void, such as an updated state agency reviewing doctor opinion to consider the new, additional evidence."  (ECF 17 at 13-14); *see, e.g.*, *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (finding that the ALJ erred by relying on the state agency doctors' opinion over the treating physician's opinion, where the state agency doctors had not reviewed fifteen months of more recent notes from the treating physician and such notes included medical evidence that could have affected the state agency doctors' assessment of the claimant's mental functional capacity). In particular, Giboyeaux points to evidence added after the state agency doctors' review of the record in 2016 relating to her reaching, handling, and fingering limitations; her limited ability to wear shoes; her diagnosis of lumbar radiculopathy and her difficulty with prolonged sitting, standing, and walking; and her fatigue, headache pain, and need to lie down intermittently. (ECF 17 at 13-18).    Indeed, "[w]hen an ALJ denies benefits, [s]he must build an 'accurate and logical bridge from the evidence to her conclusion,' and [s]he may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record."  *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations omitted).  "It is an ALJ's responsibility to recognize the

15

need for further medical evaluations of a claimant's conditions before making RFC and disability determinations." *Id.* at 557 (citations omitted); *see also Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010); *Hearings, Appeals, & Litigation Manual* (HALLEX) I-2-5-34, 1994 WL 637370, at *1 (Apr. 1, 2016). An ALJ may not "fabricate a mental RFC out of whole cloth." *Vian v. Comm'r of Soc. Sec.*, No. 1:15-cv-00040-SLC, 2017 WL 461561, at *10 (N.D. Ind. Feb. 2, 2017) (citing *Betts v. Colvin*, No. 13-cv-6540, 2016 WL 1459414, at *3 (N.D. Ill. Apr. 19, 2016)).

While the ALJ did minimally articulate her reasoning when assigning some portions of the RFC, the ALJ nevertheless fell short of building an "accurate and logical bridge from the evidence to her conclusion" as to other portions. *Chase*, 458 F. App'x at 557. On the one hand, the ALJ's reasoning as to her accommodation of Giboyeaux's hives by precluding her from exposure to extreme temperatures in the RFC is easily traced. The ALJ explained, and cited medical evidence in support, that Giboyeaux was generally able to control her hives with a combination of medications, and that exposure to extreme temperatures aggravated the condition. (AR 22 (citing AR 967, 997, 1015)). Similarly, the ALJ explained that she accounted for Giboyeaux's headaches, which the record reflects were possibly connected to stress, by limiting her to simple-type work and restricting her exposure to certain environmental conditions in the RFC. (AR 18).

On the other hand, the ALJ did not adequately explain her reasoning when assigning the portions of the RFC relating to Giboyeaux's upper extremity and low back impairments. Although the ALJ found her upper extremity and low back impairments to be non-severe at step two, the "RFC determination must still account for functional limitations from nonsevere

16

impairments." *Gillin v. Berryhill*, No. 17-CV-1295, 2018 WL 3742632, at 6 (E.D. Wis. Aug. 7, 2018) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)). As to her physical limitations, the ALJ merely summarized the evidence pertaining to her cervical radiculopathy and upper extremity limitations, but did not explain why she chose not to include any upper extremity limitations in the RFC. (AR 21-23). The ALJ applied the same summary approach to Giboyeaux's low back impairment, never explaining why she concluded that Giboyeaux could perform work at all exertional levels. (*Id.*). "[A] long factual recounting of the medical record" does not equate to a minimal articulation of the evidence such that the Court "can trace a path to the ALJ's reasoning." *Betts*, 2016 WL 1569414, at *3. "The ALJ needed to explain how she reached her conclusions about [Giboyeaux's] physical [and mental] capabilities." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (citations omitted).

Furthermore, in summarizing the medical evidence pertaining to Giboyeaux's physical impairments, the ALJ never mentioned her diagnoses of lumbar radiculopathy and systemic lupus erythematosus. (AR 810, 1538, 1660 1673). As such, it is unclear whether the ALJ overlooked this evidence or discounted it. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Without any discussion . . . this court has no idea what the ALJ thought about this evidence."); *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (stating that the ALJ's silence on an issue make sit unclear whether he rejected it, forgot it, or thought it irrelevant); *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984) (explaining that when the ALJ fails to mention evidence, it is unclear whether it was considered and not credited or ignored, making meaningful appellate review impossible). The diagnoses of lumbar radiculopathy and systemic lupus erythematosus is important evidence potentially contrary to an RFC for all exertional

17

levels of work. *See Perkins v. Astrue*, 498 F. App'x 641, 643 (7th Cir. 2013) (remanding the ALJ's decision where "the ALJ overlooked several pieces of contrary evidence"); *Villano*, 556 F.3d at 563 (stating that an ALJ "may not dismiss a line of evidence contrary to the ruling").

In contrast to her upper extremity and low back impairments, the ALJ did include extensive limitations as to Giboyeaux's mental functioning in the RFC, limiting her to, in essence, simple, routine tasks; no assembly line pace work but with end of day quotas; and superficial contact with the public and occasional contact with co-workers and supervisors. (AR 20). But in doing so, the ALJ failed to minimally articulate her reasoning as to how she arrived at these mental limitations. Rather, after summarizing Giboyeaux's mental health records, the ALJ merely stated: "The mental limits in the [RFC] account for the claimant's depression and anxiety." (AR 23). "[The ALJ's] omission [of her reasoning] in itself is sufficient to warrant reversal of the ALJ's decision." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (remanding the case where the ALJ did not explain how he arrived at the physical limitations in the RFC). Simply put, the ALJ appeared to craft the mental RFC out of whole cloth, which is unacceptable. *See, e.g.*, *Young*, 362 F.3d at 1002 (finding that the ALJ failed to explain the difference in contact limits between different groups); *Novak v. Berryhill*, No. 15 CV 50236, 2017 WL 1163733, at *7-8 (N.D. Ill. Mar. 29, 2017) (finding that the ALJ's conclusion that the claimant could not meet fast-pace or strict quotas but could meet end-of-day production quotas, was not supported by substantial evidence where no medical provider opined as such and the ALJ cited no evidence to support his conclusion).

In sum, most of the ALJ's discussion when assigning the RFC amounted to merely a

recitation of information contained in Giboyeaux's medical records. But summary is not analysis. As a result, the ALJ failed to build an "accurate and logical bridge between the ALJ's recitation of the . . . medical evidence and the decision to account for [Giboyeaux's] . . . impairments" by the limitations in the RFC. *Craft*, 539 F.3d at 677-78 (internal quotation marks omitted). Furthermore, while "the primary responsibility of producing medical evidence demonstrating the severity of impairments remains with the claimant," *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004), "[i]t is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations," *Chase*, 458 F. App'x at 557 (collecting cases). Here, the ALJ did not rely on any medical source opinions for the limitations included in the RFC, resulting in the ALJ assigning an RFC that, at least in part, lacked the support of substantial evidence. Consequently, the Commissioner's final decision should be reversed and remanded for further consideration and articulation of the RFC and the ALJ's reasoning relating thereto.[4]

## IV.  CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's final decision be REVERSED, and that the case be REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for

---

[4] Giboyeaux requests that the Court reverse the Commissioner's decision and remand for an outright award of benefits. (ECF 17 at 19). But "[a]n award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor*, 425 F.3d at 356 (citations omitted); *see also Bray v. Astrue*, No. 2:10-CV-00352, 2011 WL 3608573, at *10 (N.D. Ind. Aug. 15, 2011). Here, the record does not "yield but one supportable conclusion" in Giboyeaux's favor. *Briscoe ex rel. Taylor*, 425 F.3d at 356. Rather, the ALJ failed to minimally articulate her reasoning when assigning the RFC, and the RFC lacked the support of substantial evidence. These are issues that can only be resolved through further proceedings on remand. *See Bray*, 2011 WL 3608573, at *10.

19

the parties.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

SO ORDERED.

Entered this 9th day of January 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge